## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jennifer O., | No. 22-cv-2273 (KMM/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Jennifer O. brought this action after the Acting Commissioner of Social Security, former Defendant Kilolo Kijakazi,[1] denied her application for disability benefits. Ms. O asks the Court to reverse the Commissioner's decision for an award of benefits or remand for further proceedings. [ECF No. 1.] The parties filed cross-motions for summary judgment on the administrative record. [ECF Nos. 20, 22.] The Court grants the Commissioner's summary-judgment motion and denies Ms. O's summary-judgment motion.

## I.    BACKGROUND

Plaintiff Jennifer O. filed an application for disability insurance benefits on May 25, 2020, alleging that she had been disabled due to fibromyalgia and spinal, digestive, and mental conditions since April 17, 2018. [Tr. of Admin. Record ("R") at 271, 274, 298, ECF No. 15.] The Social Security Administration denied Ms. O's application initially and on reconsideration.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. *Press Release*, Social Security Administration, *available at* https://www.ssa.gov/news/press/releases/2023/#12-2023-2 [*archived at* https://perma.cc/2FF2-GV8T]. Under Rule 25, as the successor to former Defendant Kijakazi, Mr. O'Malley is "automatically substituted as a party." Fed. R. Civ. P. 25(d).

Ms. O requested a hearing, which was held by Administrative Law Judge ("ALJ") Sarah R. Smisek on November 2, 2021. [*Id.* at 19.] Ms. O testified in support of her claim, describing the limitations she experienced from her impairments.

On July 18, 2022, the ALJ denied Ms. O's claim in a written decision applying the required five-step evaluation process. [*Id.* at 5.] At step one, the ALJ found that Ms. O has not engaged in substantial gainful activity since April 17, 2018. [*Id.* at 21.] At step two, the ALJ found that Ms. O suffers from several severe impairments: degenerative disc disease, degenerative joint disease, obesity, anxiety, depression, and post-traumatic stress disorder. [*Id.* at 21.] At step three, the ALJ found that Ms. O's impairments did not meet or medically equal any listed impairments. [*Id.* at 22.] At step four, the ALJ determined that Ms. O retains the residual function capacity ("RFC"") to perform "simple, routine tasks . . . in a work environment free of fast-paced production requirements, and involving only simple, work-related decisions and routine workplace changes, and only occasional incidental interactions with the general public." [*Id.* at 25.] Further, the ALJ found that Ms. O was not capable of working alongside others and that she must have the opportunity to change positions every half hour. [*Id.*] Based on this RFC, the ALJ found at step four that Ms. O can perform jobs that exist in significant numbers in the national economy, such as document preparer, table worker, and inspector. [*Id.* at 31–32.]

The Social Security Appeals Council declined Ms. O's request for review. As a result, the ALJ's decision became the final decision of the Commissioner subject to judicial review. 42 U.S.C. § 405(g). Ms. O filed this lawsuit on September 19, 2022, challenging the ALJ's denial of her claim for benefits.

## II.    DISCUSSION

### A.    Legal Standard

Review of the Commissioner's denial of an application for disability benefits is limited and deferential, requiring a federal court to affirm if the decision is supported by "substantial evidence" on the record as a whole. *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014). Substantial evidence is less than a preponderance; it is relevant evidence that a reasonable person would find adequate to support the ALJ's determination. *Nolen*, 61 F.4th at 577; *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). A reviewing court must consider not only the evidence that supports the conclusion, but also that which detracts from it. *Nolen*, 61 F.4th at 577; *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000). However, the Court does not reweigh the evidence and should not reverse the Commissioner's decision simply because substantial evidence might also support a different conclusion. *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). So long as the Commissioner's decision does not fall outside of the "available zone of choice," it should be affirmed. *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022); *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). In other words, where the Commissioner's decision is among the reasonable conclusions that can be drawn from the evidence in the record as a whole, it will not be disturbed. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007); *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### B.    Analysis

Ms. O raises two challenges to the ALJ's opinion in this case. She first argues that the ALJ mishandled the 2019 opinion of Dr. Lawrence Richmond, who assessed her functional capacity and prepared a four-page report. Second, she argues that the ALJ failed to incorporate adequate limitations on social interactions into the RFC. For the reasons set forth below, the Court rejects both arguments.

### *Dr. Richmond's 2019 Opinion*

Ms. O contends that the ALJ erred by failing to properly evaluate Dr. Lawrence Richmond's 2019 opinion. Dr. Richmond and occupational therapist Lori Anderson saw Ms. O on October 16, 2019. Dr. Richmond issued a four-page report on Ms. O's functional capacity, in which he concluded that she was capable of sedentary work if she had the opportunity to alternate between sitting, standing, and walking "as needed to increase comfort." [R. at 1243–46.] Dr. Richmond also advised that Ms. O work 15 to 20 hours per week. [*Id.* at 33.] Dr. Richmond had not previously seen or treated Ms. O and did not see her again after issuing the assessment. Ms. O argues that the ALJ failed to assess both the supportability and consistency of Dr. Richmond's opinion in the weight she gave it in the RFC.

Although the language used in the caselaw and the regulations has changed over time, now an ALJ does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead of "weight," the ALJ determines an opinion's "persuasiveness" through consideration of several factors including the professional's relationship with the claimant and their specialization. 20 C.F.R.

§§ 404.1520c(a) (referring to "persuasiveness"), 404.1520c(c) (listing factors), 416.920c(a) (referring to "persuasiveness"); 416.920c(c) (listing factors); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (finding that ALJ adequately analyzed the persuasiveness of a medical under the new regulations). The most important factors for assessing the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability examines the source's own records and explanations. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency addresses the extent to which the opinion aligns with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

In evaluating the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Here, Dr. Richmond only saw Ms. O once and did not provide additional medical evidence or opinions in his report, significantly limiting the supportability of his opinion in the first instance. The ALJ stated that she considered all of the medical opinions in accordance with 20 C.F.R. § 404.1520c(c)(1)'s requirements, though admittedly she did not specifically discuss the supportability of Dr. Richmond's opinion. [R at 25.] Even were this lack of detail in her opinion writing erroneous, an error is harmless when the claimant fails to "provide some indication that the ALJ would have decided differently if the error had not occurred." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Here, Ms. O fails to articulate how the ALJ's conclusion would have been different had she explicitly discussed the supportability of Dr. Richmond's opinion. Indeed, had the

ALJ explicitly discussed this factor, she would have presumably discussed how the lack of treatment history and the absence of discussion of medical evidence reduced the persuasive value of the opinion. Therefore, considering the record as a whole, "[t]his case was not a close call, and clarification on the [supportability of Dr. Richmond's findings] . . .would not have significantly swayed the ALJ's decision." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021).

The Court similarly rejects Ms. O's contention that the ALJ failed to discuss the consistency factor as it applies to Dr. Richmond's opinion. Ms. O raises various arguments regarding this factor, but none are persuasive. The ALJ specifically found that his determination that Ms. O could only work a 15–20 hours per week was "not consistent with the physical therapy records, claimant's daily activities, and the records as a whole as discussed in greater detail below." [R. at 27.] But Ms. O overlooks that Dr. Richmond also provided percentages for time Ms. O could spend sitting and standing in an eight-hour workday, indicating that Dr. Richmond did not believe she was incapable of full-time work. [*Id.* at 1245.]

Ms. O raises a further concern with the ALJ's consistency analysis, asserting that the ALJ's conclusions regarding her physical abilities are not preclusive to also adopting Dr. Richmond's findings, such as her ability to walk for 30 minutes. [Pl.'s Br. at 16–18, ECF No. 20.] This argument is likewise unavailing. Under the applicable regulations, a medical opinion's persuasiveness is evaluated primarily based on how consistent it is "with the evidence from other medical sources and nonmedical sources in the claim." *See* 20 C.F.R. § 404.1520c(c)(2). Ms. O's more recent treatment records from the nearly two years that followed her evaluation by Dr. Richmond included, for example, Ms. O's own reports that she had been able to walk a mile and ride the stationary bike and use the treadmill. [R. at 2057,

1244.] Indeed, it appears that Ms. O followed Dr. Richmond's recommendation to begin a "program of self-paced walking to improve cardio endurance and level of activity." [*Id.* at 1244.] The record as a whole supports the ALJ's conclusions regarding Ms. O's physical abilities. Ms. O essentially asks the court to reweigh evidence, which the Court will not do. *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022) ("So long as substantial evidence supports the ALJ's decision, we will not reverse even if substantial evidence would have supported a contrary decision or even if we would have decided the case differently").

Third, Ms. O argues that the ALJ's RFC finding was "internally inconsistent" with Dr. Richmond's recommendation that Ms. O take breaks, contending that "a break by definition is time off task to rest." [Pl.'s Br. at 20–21.] But Ms. O does not point to any medical opinion that mandates that she take "time off task." Ms. O misconstrues Dr. Richmond's use of the word "break," as he recommended that she take "sitting breaks as needed." [*Id.* at 1245.] Although, Ms. O emphasizes Dr. Paulson's opinion that Ms. O should "be allowed to stand and stretch, change positions every hour for up to 5 minutes," the ALJ's RFC finding provides that Ms. O "requires the opportunity to change positions every 30 minutes." [*Id.* at 25, 177.] Moreover, the ALJ recommended that Ms. O perform sedentary work, which contemplates that Ms. O be allowed to take a break every two hours. *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an

afternoon break at approximately 2-hour intervals."). The ALJ did not err in her determination regarding Ms. O's need for breaks.

In addition, Ms. O fails to acknowledge the extent to which the ALJ's conclusion that a part-time limitation was not necessary was supported by evidence in the record. The ALJ described in detail Ms. O's activities and treatment between November 2019 and July 2021. [R. at 27–29.] That discussion and the record itself both support the ALJ's decision not to adopt Dr. Richmond's suggestion for part-time work.

Ms. O generally asserts that the ALJ erred in "rejecting" Dr. Richmond's opinion. [R. at 19.] But, as discussed, the ALJ did not reject Dr. Richmond's opinion; rather, she incorporated many of Dr. Richmond's findings into her RFC, declining to adopt only his opinion regarding part-time work, which the ALJ found unpersuasive. The ALJ was "free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). And it is "the ALJ's role to resolve conflicts in experts' opinions." *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005). The ALJ did so by conducting a thorough review of the medical record, as required. 20 C.F.R. § 416.945(a) (providing that the RFC assessment is based on "all relevant evidence in [the] case record"). Ms. O's challenges to the ALJ's evaluation of Dr. Richmond's opinion fail because substantial evidence supports the ALJ's determination regarding Ms. O's stamina and capacity for full-time work. *See Grindley*, 9 F.4th at 630.

***Limitations on Social Interactions***

Ms. O next contends that the ALJ erred because she did not "properly evaluate [Ms. O's] limitations related to social interactions and failed to accurately reflect these limitations in the RFC." [Pl.'s Br. at 22.] The ALJ noted that Ms. O had a "moderate limitation

8

in [her] ability to interact with others," and thus determined that Ms. O could not perform teamwork or work in tandem with others, recommending that any interactions with the public should be incidental and occasional. [R. at 24, 25.] But Ms. O contends that the ALJ erred in failing to adopt more stringent restrictions in the RFC. She specifically argues that the ALJ did not "explain why the general public required occasional and incidental contact while co-workers and supervisors did not. . . . There is no explanation within the four corners of the decision as to how the ALJ determined that different degrees of social interaction limitations were appropriate for various groups . . . ." [Pl.'s Br. at 24.] For two reasons, the Court finds that Ms. O has failed to demonstrate any error in the ALJ's RFC determination.

First, limitations regarding social interactions in the workplace are "commonplace in unskilled work that involves 'dealing primarily with objects, rather than with data or people,'" which is the type of work that the ALJ recommended for Ms. O. *Dereschuk v. Colvin*, No. 15-CV-86 (TNL), 2016 WL 9454329, at *25 (D. Minn. Mar. 28, 2016) (quoting SSR 85–15, 1985 WL 56857, at *4), *aff'd sub nom. Dereschuk v. Berryhill*, 691 F. App'x 292 (8th Cir. 2017). Ms. O is correct that the ALJ noted that Ms. O "reported difficulty getting along with others. She felt authority figures were intimidating." [R. at 24.] But the ALJ further explained that "[s]he was never fired or laid off from a job because of problems getting along with others." [*Id.*] Ms. O fails to reference any evidence that would support a greater restriction regarding her interactions with supervisors and coworkers.

Ms. O also argues that the ALJ erred in failing to "build an accurate and logical bridge between her conclusions related to limitations in social interactions and the evidence." [Pl.'s Br. at 22.] Although the regulations do not explicitly require an ALJ to provide a "logical

bridge" in explaining the basis for a decision denying benefits, even if that were a requirement, the ALJ's opinion here would meet it. The ALJ's decision cogently explains what evidence supports her determination about the degree of limitations appropriate for Ms. O's social interactions in a work setting. And the ALJ's conclusion that she could handle some interaction with others is supported by the record, which demonstrates that Ms. O had never been fired for workplace conflicts and reflects that she described her ability to get along with authority figures, including "bosses," as "fine." [R. at 310–12.]

In the discussion of step 3, the ALJ conducted a detailed review of overall mental and social functioning, which supported the later-adopted RFC and demonstrated that the ALJ had carefully reviewed the relevant record. This included discussion of Ms. O's ability to "attend appointments without difficulty getting along with others." [R. at 23.] The ALJ relied on State Agency psychological consultant opinions as partially persuasive, but found that the overall records and Ms. O's mental health treatment supported moderate limitations in all Paragraph B criteria, including the ability to interact with others. [R. at 30.] Moreover, in adopting functional limitations in the RFC related to Ms. O's mental health impairments, the ALJ thoroughly discussed the evidence in the record of Ms. O's mental health treatment, mental status exam findings, improvement with counseling, and treatment notes. [*Id.*] The ALJ's reliance on these records is the very logical bridge Ms. O contends is lacking, and based on the Court's review of these records, they provide substantial evidence for the ALJ's determinations regarding the limitations on interactions ultimately adopted into the RFC.

CASE 0:22-cv-02273-KMM-ECW   Doc. 31   Filed 01/08/24   Page 11 of 11

III.    **ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1.      Ms. O's motion for summary judgment [ECF No. 20] is **DENIED**; and

2.      The Commissioner's motion for summary judgment [ECF No. 22] is **GRANTED**.

**Let Judgment be Entered Accordingly.**

Date: January 8, 2024

*s/Katherine Menendez*
Katherine Menendez
United States District Judge

11